# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 17-1050V
UNPUBLISHED

| | |
|---|---|
| HARRY ROBINSON,<br><br>               Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>               Respondent. | Chief Special Master Corcoran<br><br>Filed: June 5, 2020<br><br>Special Processing Unit (SPU);<br>Findings of Fact; Onset; Influenza<br>(Flu) Vaccine; Shoulder Injury<br>Related to Vaccine Administration<br>(SIRVA) |

*Leah VaSahnja Durant*, Law Offices of Leah V. Durant, PLLC, Washington, DC, for petitioner.

*Voris Edward Johnson*, U.S. Department of Justice, Washington, DC, for respondent.

### FINDINGS OF FACT[1]

On August 3, 2017, Harry Robinson filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that he suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine received on October 15, 2016. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this unpublished fact ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the fact ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons discussed below, I find the onset of Petitioner's SIRVA began within the temporal requirements of the Table claim, because Petitioner suffered pain the same day as his vaccination.

## I.   Relevant Procedural History

Several months after the filing of this matter, the parties began settlement discussions in this case. ECF No. 20. On July 1, 2018, Petitioner filed a status report indicting that the parties viewed the case differently, and that the Chief Special Master will need to rule on the issue of entitlement. ECF No. 23.

On September 4, 2018, Respondent filed a Rule 4(c) Report formally setting down his stance on entitlement. Respondent's Rule 4(c) Report ("Respondent's Report") ECF No. 25. Respondent's position was based in part on his conclusion that Petitioner did not experience pain from his alleged SIRVA within 48 hours of receiving the vaccine. Respondent's Report at 4-5. After some further efforts at settlement, Petitioner filed a Motion for Ruling on the Record ("Mot.") on March 5, 2020, arguing that the medical records support his claim that the onset of his SIRVA pain began the day of the vaccination. ECF No. 31. The objective records plus affidavits filed in this case thus established Petitioner was entitled to compensation.

Respondent filed a response to the Motion on March 16, 2020, arguing that a preponderance of the evidence failed to demonstrate onset of Petitioner's injury within 48 hours of vaccination. Respondent's Response to Petitioner's Motion for a Ruling on the Record ("Resp.") at 1. Further, the affidavit evidence submitted was unreliable, as it was executed over a year after Petitioner's vaccination.

## II.   Issue

At issue is whether Petitioner's first symptom or manifestation of onset after vaccine administration (specifically pain) occurred within 48 hours as set forth in the Vaccine Injury Table and Qualifications and Aids to Interpretation ("QAI") for a Table SIRVA.  42 C.F.R. § 100.3(a) XIV.B. (2017) (influenza vaccination); 42 C.F.R. § 100.3(c)(10)(ii) (required onset for pain listed in the QAI); § 11(c)(1)(D)(i) (statutory six month requirement).

## III.   Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy

evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, 2005 WL 6117475, at *19.

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of*

*Health & Human Servs*., 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## IV.     Finding of Fact

I make the findings after a complete review of the record, including all medical records, affidavits, and additional evidence filed. Specifically, I highlight the following:

- Petitioner received a flu vaccine on October 15, 2016, in his left deltoid. Ex. 1.

- In his affidavit, Mr. Robinson averred that "[a]t the time I received the shot, the pain in my arm was immediate." Ex. 9 at 1. Petitioner also stated that he noticed his shoulder was sore over the next few days after the vaccination and the pain got progressively worse. *Id.* Further, Petitioner spoke to the pharmacist who administered the vaccine about his increasing shoulder discomfort. *Id.*

- Dr. Robert Baars, the pharmacist who administered the vaccine, stated in a signed and notarized letter that he recalled Mr. Robinson reported "severe pain and discomfort in the vaccinated shoulder" two days later. Ex. 13.

- On November 15, 2016, Petitioner reported shoulder pain to Dr. John Bursell. Petitioner stated he received a flu shot and "[o]ver the next few days he developed increasing left shoulder pain in the region of the injection site."[3] The treating physician assessed Petitioner with pain and loss of motion "likely secondary to post injection syndrome (SIRVA)". Ex. 2 at 6.

- Petitioner saw Dr. Bursell on several other occasions for left arm pain which was attributed to the flu vaccination. Ex. 2 at 5 (record from December 6, 2016, stating "follow-up regarding left post injection shoulder pain" and persistent left shoulder pain "following vaccination"); Ex. 12 at 2 (record form April 3, 2018, stating "shoulder pain and motion loss due to Adhesive Capsulitis/Post Injection Syndrome").

I recognize that there is a dearth of records in this case – and nothing specifically contemporaneous to vaccination that reflects the precise alleged onset. Petitioner addressed this in his affidavit, however, stating that there are a limited number of medical specialists in the remote area of Alaska, where he lives. Ex. 9 at 3. Further, the records that do exist indicate that Petitioner's pain began within 48 hours of the October 15, 2016 flu vaccine, based on statements Petitioner made to treaters in the two months immediately following vaccination. Thus, when the evidence is reviewed in its entirety, and specifically the statements of Petitioner in his affidavit and Dr. Baars, it

---

[3] The vaccination date recorded on this record, "10-13-16", is incorrect. It is unclear whether Petitioner reported the wrong date, or whether the physician erred in transcribing it.

preponderantly establishes that Petitioner's pain began within 24 hours of his vaccination. It is important to remember: preponderance *still* leaves room for doubt, but means only it something is "more likely than not" as established by the evidence. That standard is met here.

Accordingly, I find that the onset of Petitioner's pain occurred the same day as his October 15, 2016 vaccination – and thus within the 48-hour timeframe for a Table SIRVA claim.

### V.      Scheduling Order

Accordingly, the following is ORDERED:  **Respondent shall file, by no later than Monday, July 06, 2020, a status report indicating how he intends to proceed in this case**. At a minimum, the status report shall indicate whether Respondent is willing to engage in tentative discussions regarding settlement or proffer or is opposed to negotiating at this time. If Respondent opposes, then he shall show cause, on or before August 7, 2020, why Petitioner should not be found entitled to a damages award, in light of my fact finding.

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master